UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JOSEPH J. LAKATOS,

        Plaintiff,                  **DECISION AND ORDER**

       v.                                1:19-CV-00436 EAW

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____

## INTRODUCTION

Represented by counsel, plaintiff Joseph J. Lakatos ("Plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g).

Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 10; Dkt. 12), and Plaintiff's reply (Dkt. 13). For the reasons discussed below, Plaintiff's motion (Dkt. 10) is granted in part, the Commissioner's motion (Dkt. 12) is denied, and the matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

## BACKGROUND

Plaintiff protectively filed his applications for DIB and SSI on February 24, 2015. (Dkt. 6 at 71, 72).[1] In his applications, Plaintiff alleged disability beginning December 24, 2014, due to anxiety, manic depression, L3 ruptured disc, sciatica, frequent changes in weight, fractured pelvis, muscle spasms, chronic obstructive pulmonary disease ("COPD"), and rotator cuff tear. (*Id.* at 73-74). Plaintiff's applications were initially denied on July 20, 2015. (*Id.* at 94-111). At Plaintiff's request, a video hearing was held before administrative law judge ("ALJ") Benjamin Chaykin on October 23, 2017, with Plaintiff appearing in Buffalo, New York, and the ALJ presiding over the hearing from the National Hearing Center in Falls Church, Virginia. (*Id.* at 33-70). On May 11, 2018, the ALJ issued an unfavorable decision. (*Id.* at 11-29). Plaintiff requested Appeals Council review; his request was denied on February 5, 2019, making the ALJ's determination the Commissioner's final decision. (*Id.* at 5-8). This action followed.

## LEGAL STANDARD

### I.  District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C.

---

[1]  When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

§ 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.     Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a

finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* §§ 404.1520(d), 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id.* §§ 404.1509, 416.909), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* §§ 404.1520(e), 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id.* §§ 404.1520(f), 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* §§ 404.1520(g), 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

**DISCUSSION**

I. **The ALJ's Decision**

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. §§ 404.1520 and 416.920. Initially, the ALJ determined that Plaintiff last met the insured status requirements of the Act on December 31, 2014. (Dkt. 6 at 16). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since December 24, 2014, the alleged onset date. (*Id.*).

At step two, the ALJ found that Plaintiff had the following severe impairments: "right shoulder rotator cuff tear; degenerative disc disease of the lumbar spine; [COPD]; substance abuse disorder; affective disorder; and anxiety disorder." (*Id.* at 16-17). The ALJ also found that Plaintiff's medically determinable impairments of left foot fracture, fatty liver, and hypertension were non-severe. (*Id.* at 17). The ALJ noted that the record contained no evidence that Plaintiff suffered from the medically determinable impairments of posttraumatic stress disorder ("PTSD") and pelvic fracture. (*Id.*).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.*). The ALJ particularly considered the requirements of Listings 1.02, 1.04, and 3.02 in reaching this conclusion. (*Id.* at 17-19).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c), with the following additional limitations:

(1) occasional climbing of ropes, scaffolds, or ladders; (2) frequent climbing

of ramps or stairs; (3) frequent stooping, crouching, balancing, kneeling and crawling; (4) frequent reaching with the non-dominant right upper extremity; (5) no concentrated exposure to dusts, odors, fumes or other pulmonary irritants; (6) no exposure to dangerous hazards such as unprotected heights or dangerous machinery; (7) limited to simple tasks; and (8) limited to occasional interaction with supervisors, co-workers and the public.

(*Id.* at 19).

At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (*Id.* at 23).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of order picker and machine feeder. (*Id.* at 23-24). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act at any time from the alleged onset date through the date of the ALJ's decision. (*Id.* at 24).

## II.   Remand of this Matter for Further Proceedings is Necessary

Plaintiff asks the Court to reverse or, in the alternative, to remand this matter to the Commissioner, arguing that the ALJ's RFC finding was unsupported by substantial evidence because the ALJ assessed Plaintiff's mental RFC finding without a medical opinion. (Dkt. 10-1 at 10-14). For the reasons discussed below, the Court agrees that the ALJ erred in his assessment of Plaintiff's mental RFC and finds that this error necessitates remand for further administrative proceedings.

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). An ALJ's conclusion need not "perfectly

correspond with any of the opinions of medical sources cited in his decision." *Id*. However, an ALJ is not a medical professional, and "is not qualified to assess a claimant's RFC on the basis of bare medical findings." *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quotation omitted). In other words:

> An ALJ is prohibited from 'playing doctor' in the sense that 'an ALJ may not substitute his own judgment for competent medical opinion. . . . This rule is most often employed in the context of the RFC determination when the claimant argues either that the RFC is not supported by substantial evidence or that the ALJ has erred by failing to develop the record with a medical opinion on the RFC.

*Quinto v. Berryhill*, No. 3:17-cv-00024 (JCH), 2017 WL 6017931, at *12 (D. Conn. Dec. 1, 2017) (citations omitted). "[A]s a result[,] an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Dennis v. Colvin*, 195 F. Supp. 3d 469, 474 (W.D.N.Y. 2016) (quotation and citation omitted).

Here, the only medical opinion in the record concerning Plaintiff's mental impairments was that of State agency psychiatric consultant H. Tzetzo. (*See* Dkt. 6 at 77). Dr. Tzetzo noted that Plaintiff had missed three consultative examinations and determined that there was insufficient evidence to assess Plaintiff's claim. (*Id.*). The ALJ gave this opinion "little weight" because Dr. Tzetzo did "not review the updated record available at the hearing level, which contains additional mental health treatment records." (*Id.* at 22).

The ALJ's mental RFC finding limited Plaintiff to simple tasks and occasional interaction with supervisors, co-workers, and the public. (*Id.* at 19). The ALJ explained how he arrived at Plaintiff's RFC:

> As detailed in Finding [3], the evidence is consistent with moderate limitations in understanding, remembering, or applying information, moderate limitations in concentrating, persisting or maintaining pace, and

> moderate limitations in adapting or managing oneself. Due to these limitations, the undersigned has limited [Plaintiff] to simple tasks. Due to [Plaintiff's] moderate limitations in interacting with others, the undersigned has limited [Plaintiff] to no more than occasional interaction with supervisors, co-workers and the public.

(*Id.* at 22). In his step three finding, the ALJ cited evidence in the record, including Plaintiff's hearing testimony and treatment records. (*Id.* at 18-19). However, the cited treatment records contained only raw medical evidence and did not include assessments of how Plaintiff's mental impairments affect his ability to perform work-related functions on a regular and continuing basis. *See Golden v. Colvin*, No. 5:12-cv-665 (GLS/ESH), 2013 WL 5278743, at *3 (N.D.N.Y. Sept. 18, 2013) ("[W]hat is most essential in [determining the RFC] is evaluation of functional effects of mental impairments on work-related activities such as understanding, carrying out, and remembering instructions; using judgment in making work-related decisions; responding appropriately to supervision, co-workers and work situations; and dealing with changes in a routine work setting." (citation omitted)).

"While there are some cases where an ALJ may use 'common sense' to determine the limitations in an RFC determination, she may not do so where there are severe mental impairments." *Balistrieri v. Saul*, No. 19-CV-293-MJR, 2020 WL 2847501, at *5 (W.D.N.Y. June 2, 2020). This is because the discretion to make common sense judgments "does not typically extend to the determination of mental limitations, which are by their very nature highly complex and individualized." *Id.* (internal quotation marks and citation omitted); *see also Deshotel v. Berryhill*, 313 F. Supp. 3d 432, 435 (W.D.N.Y. 2018).

In this case, the ALJ concluded that Plaintiff's substance use disorder, affective disorder, and anxiety disorder were severe impairments. (Dkt. 6 at 16). Consequently, it was error for the ALJ to assess mental limitations without relying on medical opinion evidence. *See, e.g.*, *Balistrieri*, 2020 WL 2847501, at *6 (where ALJ found plaintiff suffered from severe impairments of affective disorder and anxiety disorder, it was error for ALJ to assess mental limitations without medical opinion evidence); *Dye v. Comm'r of Soc. Sec.*, 351 F. Supp. 3d 386, 393 (W.D.N.Y. 2019) ("[B]ecause the ALJ found that Plaintiff's mental health impairments were severe . . . the ALJ was required to obtain opinion evidence relating to Plaintiff's severe mental impairments to specific functional capacities."); *Jones v. Colvin*, No. 14-CV-556S, 2015 WL 5126151, at *4 (W.D.N.Y. Sept. 1, 2015) ("Here, because the ALJ concluded that Plaintiff's depression was significant enough to constitute a severe impairment, his subsequent failure to obtain a medical assessment of the extent of that impairment from either a treating or consultative examiner quantifying Plaintiff's mental limitations rendered the record incomplete."). "Without a function-by-function assessment relating the medical evidence to the medical requirements of competitive work or reliance on a medical source's opinion as to [Plaintiff's] functional capacity, the ALJ's decision leaves the Court with many unanswered questions and does not afford an adequate basis for meaningful judicial review." *Weaver v. Berryhill*, No. 17-CV-6562-FPG, 2018 WL 2077568, at *4 (W.D.N.Y. May 4, 2018). As such, remand on this basis is warranted.

The Commissioner argues that the ALJ was entitled to find Plaintiff disabled based on his failure to attend three scheduled consultative examinations. (Dkt. 12-1 at 5-6). The

SSA may seek a consultative examination of a claimant "to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow [the agency] to make a determination or decision" on a claim. 20 C.F.R. §§ 404.1519a(b), 416.919a(b). If a claimant cannot attend the scheduled consultative examination, the claimant should notify the SSA "as soon as possible before the examination date." 20 C.F.R. §§ 404.1518(a), 416.918(a). If a claimant has a "good reason, [the SSA] will schedule another examination." *Id.* The regulations provide a list of illustrative examples of good reasons for failing to appear, which include "[i]llness on the date of the scheduled examination or test." *Id.* §§ 404.1518(b)(1), 416.918(b)(1). Although the regulations "permit the SSA to deny benefits altogether where a claimant does not 'have a good reason for failing or refusing to take part in a consultative examination or test,'" *Alas v. Comm'r of Soc. Sec.*, No. 19-CV-430 (VSB) (BCM), 2020 U.S. Dist. LEXIS 33138, at *52 (S.D.N.Y. Feb. 25, 2020) (citations omitted), "the case law on the matter . . . illustrates that the failure to appear for a scheduled examination is rarely seen as a definitive bar to benefits," *McClean v. Astrue*, 650 F. Supp. 2d 223, 230 n.4 (E.D.N.Y. 2009) (alterations and citations omitted).

Here, Plaintiff missed three consultative examinations which were scheduled on May 22, June 18, and July 17, 2015. (Dkt. 6 at 243-44). However, from June 24 through December 3, 2015, Plaintiff was in inpatient treatment at Freedom Village – Horizon Health Services. (*Id.* at 516-21). As such, Plaintiff has provided a good reason for failing to appear for his July 2015 consultative examination. However, Plaintiff has not argued that the record shows he had good reasons for failing to attend the May and June

consultative examinations. (*See* Dkt. 10-1 at 14). Instead, Plaintiff contends that the ALJ could not use Plaintiff's failure to attend his consultative examinations as a basis for finding Plaintiff not disabled if this basis was not specifically cited by the ALJ. (*See id.*). Plaintiff further argues that the "the failure to appear for scheduled examinations is rarely a definitive bar to benefits." (*Id.*).

In response, the Commissioner argues that the regulations expressly permit the ALJ to find Plaintiff disabled for failing to appear for his scheduled examinations. (Dkt. 12-1 at 5-6 ("*See* 20 C.F.R. §§ 404.918(a), 416.918(a) ("If you are applying for benefits and do not have a good reason for failing or refusing to take part in a consultative examination . . . *we may find that you are not disabled. . . .*")). However, the SSA's Hearing, Appeals, and Litigation Law Manual ("HALLEX") requires the ALJ, "[d]epending on the circumstances," "to further develop the issue [of whether the claimant had good cause for not attending or not refusing to undergo a CE]." *See* HALLEX I-2-5-24.[2] The ALJ is also required to consider whether the claimant's limitations "have bearing on the failure to cooperate," while also using the general principles outlined in Social Security Ruling (SSR) 91-5p, which is used to determine whether a claimant lacked the mental capacity for

---

[2] The Second Circuit has not determined whether HALLEX policies are binding on the Commissioner. *See Tomaka v. Comm'r of Soc. Sec.*, No. 18-CV-00912-MJR, 2020 WL 359182, at *4 (W.D.N.Y. Jan. 21, 2020). Nonetheless, "[a]n administrative agency is required to follow its own internal policies when they accord with or are more demanding than the statute or its regulations." *Edwards v. Astrue*, No. 3:10-CV-1017 MRK, 2011 WL 3490024, at *6 (D. Conn. Aug. 10, 2011); *see also Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000) (concluding that the Social Security Administration should follow HALLEX policies when individual rights are affected, even when the policies are more "rigorous than would otherwise be required"). Here, the HALLEX policies at issue are consistent with the applicable regulation, which anticipates an inquiry into whether there was a good reason for missing an examination.

missing a deadline to request review. *Id.* In other words, the SSA's own internal policies confirm that the failure to attend examinations does not automatically or necessarily result in a finding of no disability.

In this case, based on the ALJ's written determination, there is no evidence that the ALJ found that Plaintiff did not have good cause for not attending the consultative examinations and that he found Plaintiff disabled on this basis. As such, the Court cannot assess what effect, if any, Plaintiff's failure to attend the consultative examinations had on the ALJ's ultimate decision, and cannot uphold the ALJ's determination on this basis. *See Weaver v. Berryhill*, No. 17-CV-6562-FPG, 2018 WL 2077568, at *5 (W.D.N.Y. May 4, 2018) (remanding for further proceedings and noting that while "an ALJ may find an individual 'not disabled' if she does not have a good reason for failing to attend a consultative examination . . . [,] [t]he ALJ's decision did not cite these reasons for finding [the plaintiff] not disabled and determining her RFC without reliance on a medical opinion").

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. 10) is granted to the extent that the matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order. The Commissioner's motion for judgment on the pleadings (Dkt. 12) is denied. The Clerk of Court is directed to enter judgment and close the case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated:     June 26, 2020
           Rochester, New York

- 13 -